**ETEX TELEPHONE COOPERATIVE, INC., Appellant,**

v.

**H. B. SANDERS et al., Appellees.**

No. 8784.

Court of Civil Appeals of Texas, Texarkana.

Aug. 26, 1980.

Rehearing Denied Sept. 30, 1980.

Melvin R. Wilcox, III, Roberts, Harbour, Smith, Harris, French & Ritter, Longview, for appellant.

O. G. Stanley, Lone Star, for Sanders.

Guy N. Harrison, Mobley, Green, Harrison & Gardner, Longview, for Fanning.

Tommy Allison, Nichols & Parker, Longview, for Hutton.

HUTCHINSON, Justice.

This is an appeal from a judgment awarding actual and exemplary damages for trespass upon real property.

Appellee, H. B. Sanders (Sanders), instituted the suit against appellant, Etex Telephone Cooperative, Inc. (Etex), alleging damages resulting from an unauthorized burial of a telephone cable on land belonging to him. Etex, in turn, joined as third-party defendants appellee Hutton Construction Company, Inc. (Hutton), and Fanning Engineers, Inc. (Fanning), praying for indemnity and/or contribution based upon its allegation that the trespass, if any, was committed by their failure to comply with the terms of their respective contracts in respect to the burying of the cable. Thereafter, Sanders made both Hutton and Fanning party defendants and each, in turn, cross-acted against Etex and each other, alleging various violations of their respective contracts.

The case was tried to a jury and, based upon answers to special issues, judgment was entered that Sanders recover from Etex and Fanning, jointly and severally, the sum of $11,900.00 as actual damages and the sum of $10,000.00 from Etex as exemplary damages. No recovery was allowed by either party as against Hutton. Etex has perfected this appeal, and Sanders and Hutton have responded; Fanning has not.

Sanders owned 54 lots, designated business, along Highway 729 at Deer Cove development near Lake of the Pines in Marion County. As part of an overall development plan, Etex was to lay an underground telephone cable on the Sanders property. Etex contracted with Fanning for engineering and construction supervision and with Hutton for the actual construction work. Sanders had previously advised Etex's equipment supervisor that he had dedicated a 15-foot utility easement adjacent to the highway with the recorded plat of the lots and showed him a copy of the recorded plat. The cable was laid on June 22, 1976, at which time Sanders observed that it was being laid outside of the easement and his efforts to stop the installing workers were ignored. He then notified Etex's equipment supervisor who told him he would take care of the problem. However, the installation was completed outside of the easement, and Etex failed to move it in spite of the repeated requests of Sanders. On August 6, 1976, the attorney for Sanders wrote a letter to Etex demanding the removal of the cable within 30 days. When the cable was not removed within the allotted time, this suit was filed. Etex's equipment supervisor testified that no physical effort was made to remove the cable during the 30-day period but that efforts were made to have the removal done by Fanning and Hutton. A new cable was placed in the

easement area in December of 1976, but the initial cable was not removed until July of 1977.

■ Etex predicates this appeal upon 12 points of error which have been grouped for argument purposes into four sections. The points will be considered by this Court as grouped.

By Points of Error Numbered 2, 3 and 4 Etex complains of the court's submission of Special Issue No. 11 for the reason that there was no evidence to support the issue and that such issue encompasses an improper and wrong measure of damage; that by the submission of Special Issue No. 10 the court failed to charge the jury as to the proper measure of damages; and that the court erred in refusing to submit a requested special issue.

Such issues are:

"SPECIAL ISSUE NO. 10

Find from the preponderance of the evidence what sum of money, if any, paid now in cash, would reasonably compensate the Plaintiff, H. B. Sanders, for such damages as have resulted by reason of such loss of use and enjoyment of his land, taking into account the fair rental value of the land in question during the length of time the telephone cable remained on the Plaintiff's land.

Answer by stating the amount, if any, in dollars and cents.

Answer: $11,960.00

"SPECIAL ISSUE NO. 11

Do you find from a preponderance of the evidence that the Plaintiff H. B. Sanders is entitled to exemplary damages against the Defendant, ETEX TELEPHONE COOPERATIVE, INC.?

Answer: 'We Do' or 'We Do Not'

Answer: We do

You are instructed that before you can assess exemplary damages, you must believe and find from a preponderance of the evidence, that in laying the telephone cable or allowing the telephone cable to remain on Plaintiff's land, the Defendant acted with malicious intent or with such gross negligence and disregard of the rights of the Plaintiff as is deemed equivalent to such malicious intent.

'Gross Negligence' is that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the rights or welfare of the person or persons to be affected by it.

You are further instructed that exemplary damages may be assessed as punishment for a wrongful act done, if any, if the facts warrant the same. In awarding such damages, if any, you may consider mental distress and suffering, if any, of the Plaintiff, and the sense of wrong and insult, if any, to which Plaintiff was subject as a result of the wrongful acts."

Etex's requested special issue, unsubmitted, is as follows:

"What sum of money, if any, paid now in cash, do you find from a preponderance of the evidence would reasonably compensate the Plaintiff, H. B. SANDERS, for such economic loss caused by such trespass, if any.

In answering the above Issue, you are instructed that you may consider the fair rental value of the land in question which you find by preponderance of the evidence as well as the length of time the particular trespass damaged Plaintiff, if any. You are further instructed that you are not to include any length of time or any damages for any length of time wherein you believe from a preponderance of the evidence that Plaintiff, H. B. SANDERS, hindered or stopped the removal of the telephone line to the proper place, if you have found that a trespass has occurred.

Answer by stating the amount, if any, in dollars and cents.

ANSWERS_____DOLLARS"

Sanders neither before nor at the trial claimed any permanent damage to his lots and sought recovery only for the loss of use and enjoyment of his land based upon the fair rental value thereof during the time

the cable remained outside the designated easement. Etex readily concedes that the measure of damages for the temporary loss of use of land is in most instances measured by the rental value of the land taken or the diminished rental value of the property as a whole. *Trinity & S. Ry. Co. v. Schofield,* 72 Tex. 496, 10 S.W. 575 (1889); *Lone Star Gas Co. v. Hutton,* 58 S.W.2d 19 (Tex.Com.App. 1933, holding approved); *Bradley v. McIntyre,* 373 S.W.2d 389 (Tex.Civ.App.Houston 1963, writ ref'd n. r. e.); *City of Abilene v. Walker,* 309 S.W.2d 494 (Tex.Civ.App.Eastland 1958, no writ); *Humble Pipe Line Co. v. Day,* 172 S.W.2d 356 (Tex.Civ.App. Waco 1943, writ ref'd w. o. m.); *City of Tyler v. House,* 64 S.W.2d 1007 (Tex.Civ.App.Texarkana 1933, no writ); *Gulf Pipe Line Co. v. Hurst,* 230 S.W. 1024 (Tex.Civ.App.San Antonio 1921, no writ). However, Etex contends that because Sanders did not hold out the lots for rent, but only for sale, he cannot recover damages for lost rent. Sanders testified that he was unable to use and enjoy his land while the cable was buried there, that the lots were not usable during the time the cable was buried improperly, and that he took the lots off the real estate market because the lots could not be sold in that condition. The purpose of the measure of damage being based upon the value of the loss of use is to compensate the owner for his loss due to the inability to use the property for its normal purposes. He testified, without objection, that he had rented some non–commercial lots in the subdivision for $35.00 per month and some for $40.00 per month. Etex's assertion that Sanders was not entitled to the rental value of his property because he never intended to rent it but retained it solely for the purpose of resale is without merit. There being no assertion by Etex that there is no evidence to support the amount of the damages found by the jury, Etex's points of error numbered 2, 3 and 4 are overruled.

■ Etex, by its points of error numbered 1, 5 and 6, claims the trial court erred in submitting Special Issue No. 10 because it failed to allow the jury to consider Etex's assertion that Sanders refused to allow the removal of the cable for a period of time;

that the court erred in disregarding the jury's answers to Special Issues Numbered 19, 20, 21, 27 and 28; and that the court erred in rendering its judgment for Sanders in the amount found by the jury for the reason that, by its answer to Special Issue No. 19, the jury found that all of the damages resulted from the failure to remove the cable and yet, by its answer to Special Issue No. 27, found that Sanders had prevented its removal after August 6, 1976, and, by its answer to Special Issue No. 28, found that Sanders had consented to the use of the cable.

■ Special Issues No. 20 and 21 as submitted were based upon the introduction in evidence by Etex of an unrecorded utility easement dated October 29, 1959, from H. P. Allen to Etex upon 32 of the lots in question and in response the jury found that the cable in controversy was buried within such easement. Etex did not show that this easement was ever filed for record nor did it show that Sanders had actual notice of such easement. Thus there was no showing of notice, either actual or constructive, and the jury finding that 32 of the lots are within such easement is meaningless. A bona fide purchaser of a servient estate who acquires it without notice of an easement takes the estate free of the easement. *Cambridge Shores Home Ass'n. v. Spring Valley Lodge Co.,* 422 S.W.2d 10 (Tex.Civ.App.Dallas 1967, no writ); *Lesley v. City of Rule,* 255 S.W.2d 312 (Tex.Civ.App.Eastland 1953, writ ref'd n. r. e.); *Latimer v. Hess,* 183 S.W.2d 996 (Tex.Civ.App. Texarkana 1944, writ ref'd); 21 Tex.Jur.2d Easements § 35 at 163.

Etex asserts that since the jury found, in response to Special Issue No. 27, that Sanders prevented the removal of the buried cables after August 6, 1976, the date of the attorney's demand letter, and, in response to Special Issue No. 28, found that Sanders consented to its use of the cable on August 6, 1976, the judgment should be reformed and reduced to an amount to be determined by dividing the amount found by the jury in its answer to Special Issue No. 10 by the

number of months the cable remained on the property, thereby ascertaining the monthly damage, and then award Sanders a judgment on a pro rata basis for forty–six days. The only occurrence of August 6, 1976, was the writing of the letter by Sanders' attorney giving Etex 30 days in which to remove the cable from Sanders' land. It is apparent that the trial court disregarded the jury's answers to each of the two issues, and we agree with the action of the trial court. The evidence showed that Sanders repeatedly requested the telephone company to move the cable and that he gave both oral and written permission for Etex to enter upon his lands for the purpose of removing the cable. Sanders also testified that neither Etex nor Fanning ever offered to move the cable, and Etex's representative testified that he promised Sanders that his company would move the cable but that Etex never actually got out to the property to do it. Sanders testified that Etex never asked for permission to enter upon his land in order to remove the cable. The fact that he stated on cross–examination that if his permission had been sought it would have been granted if his claim had been settled cannot be termed a refusal to permit the removal of the cable and as a consent for its continued use.

Points of Error Numbered 7, 8 and 11 are grouped by Etex for discussion purposes. Point of Error No. 7 asserts that the trial court erred in granting judgment for exemplary damages because the jury in response to Special Issue No. 27 found that Sanders himself prevented the removal of the cable. Point of Error No. 8 is a no evidence to support the award of exemplary damage point. Point of Error No. 11 is also a no evidence point. By it, Etex states that both Hutton and Fanning were independent contractors as a matter of law and that there were no pleadings or evidence to support the contrary jury finding.

Our previous discussion of Special Issue No. 27 renders a discussion of Point of Error No. 7 unnecessary and such point is found to be without merit.

■ Etex's principal argument under the remaining points is that it can only be liable for exemplary damages on the basis of the actions of Hutton and Fanning and that, since Hutton and Fanning were not under its control, and it did not ratify their acts, it cannot be held liable for exemplary damages. In response, Sanders submits that the finding of exemplary damages is based, not on the acts of Etex's agents, but on its own action in failing to remove the cable for 13 months after being informed of the mislocation and after repeated demands that it be removed. The evidence also reveals that Etex put the cable into service some three months after it first promised to remove it and let it remain in place for months thereafter. Etex's liability for exemplary damages is based on its own negligence rather than that of either Hutton or Fanning.

Etex does not complain of the court's instruction following Special Issue No. 11, and it appears that such instruction properly informed the jury of the fact requirements for the assessment of exemplary damages. We therefore hold that the evidence supports the jury finding that Etex's failure to remove the cable was willful and that such failure constituted a conscious indifference to the rights of Sanders. *Cain v. Fontana*, 423 S.W.2d 134 (Tex.Civ. App.San Antonio 1967, writ ref'd n. r. e.); *Hood v. Adams*, 334 S.W.2d 206 (Tex.Civ. App.Amarillo 1960, no writ). Unquestioned is the fact that Etex's employee was acting in a managerial capacity. Therefore there was no need for Sanders to show that Etex had authorized or ratified the failure to act upon which the claim for punitive damages was based. *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627 (Tex.1967); *Fort Worth Elevators Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397 (1934); *Bass v. Metzger*, 569 S.W.2d 917 (Tex.Civ.App.Corpus Christi 1978, writ ref'd n. r. e.); *K–Mart No. 4195 v. Judge*, 515 S.W.2d 148 (Tex.Civ.App. Beaumont 1974, writ dism'd). The jury's finding in response to Special Issue No. 22 that Fanning and Hutton were not independent contractors is not material to the court's award of punitive damages and even

if it should not have been submitted, any error rendered thereby is harmless.

■ By Points of Error Numbered 9, 10 and 12, Etex contends that the trial court erred in failing to render a judgment for indemnity against both Fanning and Hutton and by rendering a judgment that it take nothing as to Hutton and/or Fanning for indemnity and/or contribution.

In answer to Special Issues No. 30, 31, 32, 33 and 35 the jury *failed* to find that:

(1) Fanning properly coordinated the work to facilitate the expeditious completion of the system.

(2) Fanning rendered diligent and competent engineering services.

(3) Fanning fulfilled its duty of issuing proper directions to Hutton.

(4) Fanning gave Hutton necessary directions to enable Hutton to install the cable in the proper place.

(5) Fanning determined the proper location for the cable.

In answer to Special Issues No. 34 and 36 the jury found that in installing the cable Hutton was following the directions given by Fanning and that the location of the cable was approved by Fanning.

It should first be noted that the jury in its response to Issues No. 30, 31, 32, 33 and 35 failed to find from a preponderance of the evidence the existence of certain facts. These failures to find cannot be used, as asserted by Etex, as findings of fact of the existence of the opposite of the facts about which the issues *did* inquire.

Etex is not entitled to indemnity or to contribution from Hutton, simply because the jury failed to find Hutton to be a tort feasor that proximately caused any damage to Sanders. The jury did find that Hutton trespassed on Sanders' land but further found that such trespass ceased on June 21, 1976, and did not proximately cause any loss of use or enjoyment of the land. Further the jury found that one hundred percent of Sanders' damages was caused by the failure to remove the cable rather than its placement. There being no fact finding by the jury that Hutton was guilty of any conduct resulting in damage to Sanders, Etex is not entitled to common law indemnity nor contribution under Tex.Rev.Civ. Stat.Ann. art. 2212 and art. 2212a (Supp. 1980), from Hutton.

■ In response to special issues, the jury found that both Etex and Fanning trespassed upon Sanders' property, that such trespass continued until July of 1977, and that each of such trespasses proximately resulted in a loss of the use and enjoyment of the land. The actual damages were found by the jury and the court entered judgment for such amount against both Etex and Fanning, jointly and severally. Under the jury findings both Etex and Fanning were each guilty of the same quality of negligence toward Sanders and neither are entitled to indemnity. *South Austin Drive In Theatre v. Thomison*, 421 S.W.2d 933 (Tex.Civ.App.Austin 1967, writ ref'd n. r. e.)

The judgment of the trial court is affirmed.